United States District Court
Southern District of Texas
**ENTERED**
December 09, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PHILLIP  JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-17 |
| | § | |
| DAVID  GUTIERREZ, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This civil rights action was filed by Phillip B. Jackson, a Texas state prisoner, pursuant to 42 U.S.C. § 1983.  Plaintiff is appearing *pro se*.  Plaintiff is currently incarcerated at the Wayne Scott Unit in Angleton, Texas.  Plaintiff alleges Defendant David Gutierrez, Presiding Officer of the Texas Board of Pardons and Paroles, illegally and unconstitutionally revoked his eligibility for House Bill 1433 ("H.B. 1433") discretionary mandatory supervision after Plaintiff was previously deemed eligible.[1]

On May 16, 2016, Plaintiff filed a Motion for Summary Judgment (D.E. 22) along with a declaration in support (D.E. 23).  On May 16 and May 23, 2016, Plaintiff filed Motions for Preliminary Injunction to compel Defendant to reinstate his mandatory supervision eligibility (D.E. 26 and D.E. 28).  On June 24, 2016, Defendant filed a Motion

---

[1] On March 14, 2016, the undersigned entered a Memorandum and Recommendation stating Plaintiff's claims for declaratory and injunctive relief challenging the Parole Board's policies and procedures are cognizable in a § 1983 proceeding and dismissing his claims against Defendant Gutierrez in his individual capacity for money damages.  (D.E. 11).  On June 7, 2016, this Memorandum and Recommendation was adopted by order of U.S. District Judge Hilda Tagle and Judge Tagle granted Plaintiff leave to amend his complaint in order to drop Defendant Benoit as a defendant.  (D.E. 33).  Further, Judge Tagle found that Plaintiff sued Defendant Gutierrez in his official capacity only.  (D.E. 33, Page 4).  On June 20, 2016, Plaintiff filed a Motion to Amend Complaint (D.E. 35) to remove Defendant Benoit as a defendant which was granted by the undersigned on June 21, 2016.  (D.E. 37).  On November 21, 2016, Plaintiff filed his Amended Complaint.  (D.E. 58).

for Summary Judgment.  (D.E. 38).  As discussed more fully below, it is recommended Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motions be **DENIED**, and this action be **DISMISSED**.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND

Plaintiff is an inmate of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and is currently incarcerated at the Wayne Scott Unit in Angleton, Texas.  (D.E. 1, Page 3).

On September 11, 2000, Plaintiff pleaded guilty to the felony offense of aggravated assault, cause number 00-CR-2318-D, in the 105th Judicial District Court of Nueces County, Texas.  (D.E. 38-1, Page 4).  Pursuant to a plea agreement, the trial court deferred the adjudication of guilt and placed Plaintiff on probation.  (D.E. 38-1, Page 4).  The State of Texas filed a motion to proceed with the adjudication of guilt, alleging Plaintiff violated the terms of his probation.  (D.E. 38-1, Page 4).  On July 22, 2003, the trial court held a hearing on the State's motion and the trial court found Plaintiff violated six conditions of his probation agreement.[2]  (D.E. 38-1, Page 4).  Accordingly, the trial court withdrew the order

---

[2] Plaintiff violated: "Condition (A), namely: COMMIT NO OFFENSE AGAINST THE LAWS of this State or of any other State of the United States; Condition (G), namely: AVOID PERSONS OR PLACES of disreputable or harmful character; Condition (H), namely: DO NOT USE alcoholic beverages, narcotics or any other controlled substances; SUBMIT TO URINALYSIS as directed; Condition (J), namely: PAY the following in CASH, CASHIER'S CHECK, OR MONEY ORDER in one or several sums payable through the Nueces County CSCD as determined by the Court: $40.00 MONTHLY SUPERVISION FEES beginning 10-01-00 and each and every month thereafter while under supervision; Condition (L, 6), namely: Complete 300 hours of COMMUNITY SUPERVISION RESTITUTION at the rate of 16 hours/month beginning 09-11-00 and to be completed by 9-11-03; Condition (L, 7), namely: Observe a

deferring adjudication and heard evidence on the issue of punishment. (D.E. 38-1, Page 4). On July 24, 2003, the trial court sentenced Plaintiff to twelve years in the TDCJ. (D.E. 38-1, Pages 4, 5).

On September 29, 2003, Plaintiff was taken into custody of the TDCJ. (D.E. 38-2, Page 3). On December 12, 2008, Plaintiff was released from TDCJ custody on parole. (D.E. 38-2, Page 3). On December 19, 2012, Plaintiff's parole was revoked[3] and he received a two-year sentence for the conviction which violated his parole, assault family violence in cause no. 12-CR-4155-H. (D.E. 38-2, Page 3). On May 6, 2013, Plaintiff was returned to TDCJ custody due to his parole revocation and to serve his new sentence. (D.E. 38-2, Page 4).

Proceeding *pro se* and *in forma pauperis*, Plaintiff alleges that his eligibility for mandatory supervision[4] was changed in violation of his Due Process rights and the Ex Post Facto Clause. (D.E. 1, Page 3). Plaintiff named as defendants the Presiding Officer for the Texas Board of Pardons and Parole, David Gutierrez (Defendant Gutierrez), and a Texas

CURFEW from 9:00 p.m. TO 6:00 a.m. for 60 months beginning 09-11-00 unless attending school, program for counseling or work." (D.E. 38-1, Page 4).
[3] A pre-revocation warrant of arrest was issued on November 22, 2011 by the Parole Division and executed on December 5, 2011 in Nueces County. (D.E. 38-2, Page 3). Plaintiff was transferred from Nueces County to ISF custody on August 30, 2012. (D.E. 38-2, Page 3). The pre-revocation warrant was withdrawn on October 5, 2012, and Plaintiff was released from custody. (D.E. 38-2, Page 3). Plaintiff received jail credit from December 5, 2011 to October 5, 2012. (D.E. 38-2, Page 3). Another pre-revocation arrest warrant was issued November 17, 2012 by the Parole Division, and executed on November 25, 2012 in Nueces County. (D.E. 38-2, Page 3). Plaintiff's parole was revoked on December 19, 2012. (D.E. 38-2, Page 3). Plaintiff was also convicted of "Assault Family Violence" by the 347th Judicial District Court of Nueces County and received a two-year sentence, set to begin on November 23, 2012. (D.E. 38-2, Page 3).
[4] According to the Texas Department of Criminal Justice, mandatory supervision is defined as "[a] type of release from prison provided by law for restricted categories of offenders. Eligible offenders are released on [mandatory supervision] when their calendar time served added to their good time credit equals the length of their prison sentence." Parole, on the other hand, is defined as "[t]he conditional release of an offender from prison, by a [Texas Board of Pardons and Paroles] decision, to serve the remainder of his/her sentence under supervision in the community." *See* "Definitions and Acronyms," TEX. DEP'T OF CRIM. JUST., http://tdcj.state.tx.us/definitions/ (last visited Dec. 9, 2016).

3 / 18

Board of Pardons and Parole program supervisor, Beth Benoit (Defendant Benoit).  (D.E. 1, Page 3).  A *Spears*[5] hearing was conducted on February 24, 2016.

On May 16, 2016, Plaintiff filed a motion for summary judgment as to the liability of Defendant Gutierrez.  (D.E. 22, Page 1).  On May 16, 2016, Plaintiff filed a Memorandum of Law in support of his motion for a preliminary injunction and on May 23, 2016, Plaintiff filed a Motion for a Preliminary Injunction to require Defendant to classify Plaintiff as H.B. 1433[6] eligible.  (D.E. 26 and D.E. 28).  On June 3 and 13, 2016, Defendant filed responses to Plaintiff's motion for preliminary injunction.  (D.E. 32 and D.E. 34).  On June 20, 2016, Plaintiff filed his Response to Defendant's Response.  (D.E. 36).

On June 7, 2016, U.S. District Judge Hilda Tagle granted Plaintiff leave to amend his complaint within 28 days for the sole purpose of dropping Defendant Benoit from the action.  (D.E. 33).  On June 20, 2016, Plaintiff filed a Motion to Amend his complaint in order to drop Defendant Benoit from the claim in response to the Spears hearing and the June 7, 2016 Order of U.S. District Judge Hilda G. Tagle.  (D.E. 35, Page 1).  On June 21, 2016, this Motion was granted and Defendant Benoit was terminated as a party.  (D.E. 37).

---

[5] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that the testimony given at a *Spears* hearing is incorporated into the pleadings).

[6] Plaintiff claims that when he entered TDCJ in 2003, he was designated as a candidate for H.B. 1433 discretionary mandatory supervision, and that Defendant revoked his eligibility in May 2013.  (D.E. 58, Pages 1-2).  The Texas Court of Criminal Appeals explained the significance of "H.B. 1433" in TDCJ documentation:

> "HB 1433" refers to the 1995 House Bill that enacted the discretionary mandatory-supervision law. 74th Leg., R.S., ch. 263, § 2, 1995 Tex. Gen. Laws 2592 (H.B. No. 1433).  As enacted, HB 1433 amended article 42.18 of the Code of Criminal Procedure.  This provision was later recodified in the Government Code at section 508.149(b).  Presumably what TDCJ intends to convey by [noting that an inmate is eligible or ineligible for H.B. 1433] is that a parole panel is not absolutely required to release applicant on mandatory supervision; rather, applicant is subject to release on *discretionary* mandatory supervision.

*Ex parte Hill*, 208 S.W.3d 462, 465 n. 11 (Tex. Crim. App. 2006) (emphasis in original); *see also id.* at 466 (Johnson, J., dissenting) (noting that "discretionary mandatory supervision" is "a legislative oxymoron").

On June 24, 2016, Defendant filed a Motion for Summary Judgment and a Response in Opposition to Plaintiff's Motion for Summary Judgment.  (D.E. 38 and D.E. 39).  On June 28, 2016, Plaintiff filed a Motion to Supplement his Motion for a Preliminary Injunction.  (D.E. 40).  On July 6, 2016, Defendant filed a Motion for Leave to Supplement its Motion for Summary Judgment (D.E. 41) which was granted by the undersigned on July 7, 2016.  (D.E. 42).   On July, 8, 2016, Defendant filed a Motion for Leave to file an Amended Answer (D.E. 44) and its First Amended Answer (D.E. 45).  On July 11, 2016, the undersigned granted Defendant's Motion for Leave to File an Amended Answer.  (D.E. 46).

Also on July 11, 2016, Plaintiff filed a Motion to Supplement his Response to Defendant's Motion for Summary Judgment.  (D.E. 47).  On July 19, 2016, the undersigned granted this motion.  (D.E. 50).  On November 7, 2016, Plaintiff filed a Motion to Amend his Complaint.  (D.E. 54).  On November 10, 2016, Plaintiff filed a Motion to Supplement Plaintiff's Motion for Summary Judgment and Plaintiff's Response to Defendant's Motion for Summary Judgment.  (D.E. 55).  On November 21, 2016, the undersigned granted Plaintiff's Motion to Amend his Complaint (D.E. 54) and his Motion to Supplement his Motion for Summary Judgment (D.E. 55).  (D.E. 57).  In the same order, the undersigned denied Plaintiff's Motion to Supplement Motion for Preliminary Injunction (D.E. 40).  (D.E. 57).  Also on November 21, 2016, Plaintiff filed his Amended Complaint.  (D.E. 58).  On December 5, 2016, Defendant filed his Second Amended Answer in which he asserted the case was frivolous and asked the Court to enter an order in accordance with the Prison Litigation Reform Act's three strike application.  (D.E. 59).

## III.   SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must satisfy not only the initial burden of production on the summary judgment motion by showing that there is no genuine issue of material fact, but also the burden of persuasion on the claim itself by showing that it would be entitled to judgment as a matter of law at trial.  *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-cv-295, 2013 WL 6838864, at *4 (S.D. Tex. Dec. 27, 2013) (citing *Provenza v. Gulf South Admin. Serv., Inc.*, 67 F.Supp.2d 617, 619 (M.D. La. 1999)).  Each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Id.* (citing *Am. Int.'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 6662 (5th Cir. 2012)).  If there is no genuine issue of fact and one party is entitled to prevail as a matter of law, the court may render summary judgment.  *Id.* (citing *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004)).

## IV.   DISCUSSION

### A.  42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a Section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002).  "Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

### B.  Defendant's Motion for Summary Judgment

#### 1.  Plaintiff's Claims are Barred by the Statute of Limitations

Defendant argues Plaintiff's claims are barred by the applicable statute of limitations. (D.E. 38, Page 5).  Defendant, pointing to Plaintiff's allegation that Defendant revoked his eligibility for mandatory supervision on May 6, 2013, asserts that Plaintiff was required to file his complaint by May 6, 2015 and his failure to do so means it was not timely filed. (D.E. 38, Page 5).  Plaintiff responds by arguing Defendant's revocation of his eligibility for mandatory supervision is a continuing violation, such that Plaintiff's claims are not time-barred.  (D.E. 47, Page 1).

For claims brought under 42 U.S.C. § 1983, the limitations period is "determined by the general statute of limitations governing personal injuries in the forum state."  *Price v.*

*City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).  The Texas statute of limitations for personal injuries states such claims must be brought "not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003.  Although Texas law governs the limitations period, federal law determines when a cause of action arises.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)).  "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint."  *Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987) (citation omitted).  He "need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim." *Piotrowski*, 51 F.3d at 516 (citing *Harrison v. United States,* 708 F.2d 1023, 1027 (5th Cir. 1983)).  When a claim constitutes a continuing violation, the limitations period begins to run at the end of the violation.  *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000).  Courts "must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 867 (5th Cir. 1993) (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)).  "A plaintiff cannot use the continuing violation theory to resurrect claims alleging a civil rights violation 'concluded in the past, even though its effects persist.'"  *Preston v. Tex. Bd. of Pardons*, No. A-16-CA-897-RP, 2016 WL 4146213, at *2 (W.D. Tex. Aug. 3, 2016) (quoting *McGregor*, 3 F.3d at 867).

Plaintiff filed his complaint on January 14, 2016.  (D.E. 1).  Although Plaintiff characterizes Defendant's actions as a continuing violation, his claims arise from a single alleged violation—Defendant's revocation of his eligibility for H.B. 1433 Discretionary Mandatory Supervision on May 3, 2013.  (D.E. 58, Pages 1-2).  During the *Spears* hearing, Plaintiff stated he received notice of this alleged revocation when he returned to TDCJ custody in 2013.  In his original and second amended complaints, Plaintiff acknowledged that he returned to TDCJ custody on May 3, 2013.  (D.E. 1, Page 7 and D.E. 58, Pages 1-2). Therefore, by his own admission, Plaintiff had actual knowledge of the facts giving rise to this cause of action no later than May 3, 2013.[7]  Since his complaint was filed more than two years after his claims accrued, they are barred by the statute of limitations.   It is respectfully recommended Defendant's Motion for Summary Judgment be **GRANTED** and this action be **DISMISSED** as time barred.  However, should the Court disagree that the claims are time barred, the undersigned addresses the merits of Plaintiff's claims and recommends Plaintiff's case be dismissed because he has never been eligible for mandatory supervision.

### 2.  Eligibility for Mandatory Supervision

Plaintiff alleges Defendant violated his rights of due process by removing him from mandatory supervision eligibility, thus depriving him of a state-created liberty interest, without notice or a hearing allowing him to present any evidence on his behalf.  (D.E. 58, Page 2).  Plaintiff states he could have presented documents to show he was eligible for H.B. 1433 mandatory supervision had he been given notice and a hearing by the Texas

---

[7] Defendant's exhibits show the date Plaintiff was returned to TDCJ custody as being May 6, 2013.  (D.E. 38-2, Page 4). No matter which date is used to calculate the statute of limitations, Plaintiff's claim is barred.

Board of Pardons and Paroles ("TBPP").  (D.E. 24, Pages 2-3).  He claims that when he was entered into custody in September 2003,[8] he was placed under eligibility for H.B. 1433 mandatory supervision.  (D.E. 58, Page 1).  Plaintiff contends Defendant denied him "not merely a possibility but…an expectancy of release," and Defendant refused to correct the violation.  (D.E. 58, Page 2).  Defendant argues Plaintiff had no liberty interest in early release because he was never eligible for discretionary mandatory supervision under Texas Government Code § 508.149.   (D.E. 38, Page 7).   Defendant further argues Plaintiff mistakenly relied on an Inmate Tracking System Commitment Data Form ("Commitment Data Form"), which he received when he entered TDCJ custody in September 2003, as evidence he was placed under discretionary mandatory supervision when the form actually states Plaintiff was not eligible.  (D.E. 38, Pages 8-9).  Finally, Defendant argues Plaintiff was released on parole, rather than on mandatory supervision in 2008, and that he remained ineligible when he returned to TDCJ on December 19, 2012.  (D.E. 38, Page 9).

The Due Process Clause guards against arbitrary deprivation of protected liberty interests.  *See* U.S. Const. amend. XIV ("No State shall…deprive any person of life, liberty, or property, without due process of law....").  The Due Process Clause does not create liberty interests in and of itself.  *Hewitt v. Helms,* 459 U.S. 460, 476 (1983).  If a protected interest has not been created in some other manner, the Due Process Clause is not implicated.  *Parker v. Cook,* 642 F.2d 865, 867 (5th Cir.1981).  A protected liberty interest arises when state or local rules and regulations sufficiently circumscribe a government official's discretion as to make a course of action mandatory or expected.  *Hewitt,* 459 U.S.

---

[8] Plaintiff claims he entered TDCJ on September 26, 2003, but Defendant asserts TDCJ records indicate Plaintiff was received on September 29, 2003.  *See* D.E. 58, Page 1 and D.E. 38, Page 7 n. 3.

at 476.  The Supreme Court has emphasized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Texas state prisoners may become eligible for release either by parole or through the mandatory supervised release program.  *Madison*, 104 F.3d at 768.  Texas Government Code Section 508.001 provides:

> (5) "Mandatory supervision" means the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division.
> (6) "Parole" means the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division.

Tex. Gov't Code § 508.001.  Texas Government Code Section 508.147(a) states the requirements for an inmate's release to mandatory supervision: "[e]xcept as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced."  Section 508.149 qualifies Section 508.147 by providing circumstances in which an inmate would be ineligible for mandatory supervision, notwithstanding that the inmate's calendar time served added to any accrued good conduct time equaled the term to which the inmate was sentenced.

Section 508.149(a) enumerates certain crimes that render an offender ineligible for mandatory supervised release.  For example, "[a]n inmate may not be released to mandatory supervision if the inmate is serving a sentence for or has been previously been convicted of…a first degree felony or second degree felony under Section 22.02, Penal Code."  Tex. Gov't Code § 508.149(a)(7).   Section 22.02 of the Texas Penal Code criminalizes aggravated assault.[9]  The purpose of Section 508.149 was "to make all inmates who have prior convictions for serious offenses ineligible for mandatory supervision release."  *Ex parte Ervin*, 187 S.W.3d 386, 389 (Tex. Crim. App. 2005).

Section 508.149 also operates to make mandatory supervised release discretionary: "[a]n inmate may not be released to mandatory supervision if a parole panel determines that (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public."  Tex. Gov't Code § 508.149(b).  Therefore, even if an inmate is not ineligible for mandatory supervision due to a prior conviction listed in Section 508.149(a), he or she may still be denied mandatory supervised release at the discretion of a parole panel.  While there is no constitutional expectancy of parole in Texas,[10] the Fifth Circuit held there is a constitutional expectancy of early release created by the mandatory supervision program in Texas.  *Teague*

---

[9] "A person commits an offense [of aggravated assault] if the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault."  Tex. Penal Code § 22.02(a).  Section 21.01(a) defines assault:

> A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

[10] The Fifth Circuit has held that because "it is entirely speculative" whether a prisoner will be released on parole, "there is no constitutional expectancy of parole in Texas."  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing *Creel v. Keene,* 928 F.2d 707 (5th Cir.1991)).

*v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007).  For an inmate to have a liberty interest in mandatory supervision, the inmate must be eligible for supervised release.  *Kossie v. Crain*, 602 F.Supp.2d 786, 790-91 (S. D. Tex. 2009) (citing *Ex Parte Geiken*, 28 S.W.3d 553, 558-59 (Tex. Crim. App 2000) (en banc)) ("[I]nmates *who are eligible* for release to mandatory supervision do have a protected liberty interest in that release.") (emphasis in original).

Here, Plaintiff fails to prove his constitutional rights were violated by his ineligibility for discretionary mandatory supervision.  In 2003, he was convicted of second-degree felony aggravated assault under Texas Penal Code Section 22.02, and therefore has never been eligible for mandatory supervised release.  *See* D.E. 38-1, Pages 3-5; Tex. Gov't Code § 508.149(a)(7).  Furthermore, the evidence offered by the parties does not support Plaintiff's claim that he was ever eligible for mandatory supervision. Plaintiff relies on the Commitment Data Form as his only support for the proposition that he was placed under consideration for discretionary mandatory supervision in September 2003.  (D.E. 1-1, Page 1).

The Commitment Data Form does not state that Plaintiff was eligible for mandatory supervision.  With his Motion for Summary Judgment, Defendant attaches the affidavit of Charley Valdez, Program Supervisor III for the Classification and Records Department of TDCJ-CID, who explains the terminology of the Commitment Data Form.  (D.E. 38-2).  Mr. Valdez states that when "Discretionary Mandatory Supervision" came into effect on September 1, 1996, all Commitment Data Forms were printed with the statement "*Discretionary Mandatory Supervision Release Candidate – 1433," regardless of

eligibility.  (D.E. 38-2, Page 3).  Below that statement, it was standard practice to have further comment of "Non-Mandatory Supv. Prospect" or "Mandatory Supv. Prospect" on the line below.  (D.E. 38-2, Page 3).  The phrase "Non-Mandatory Supv. Prospect" signifies that an inmate is ineligible for mandatory supervision, since Mr. Valdez avers Plaintiff was designated as a "Non-Mandatory Supervision Prospect" due to Plaintiff's conviction for aggravated assault.  (D.E. 38-2, Page 3).  Mr. Valdez states this practice was discontinued on May 31, 2005, and all Commitment Data Forms issued thereafter instead "have one of the following remarks: 'Non-Mandatory Supv. Prospect,' 'Mandatory Supv. Prospect,' or "Mandatory Supv. Prospect' with 'Discretionary Mandatory Supervision (HB1433) Candidate' on the next line."  (D.E. 38-2, Page 3).

Plaintiff also claims that on July 1, 2008, the parole board voted and granted him H.B. 1433 discretionary mandatory supervision.  (D.E. 58, Page 1).  Defendant asserts Plaintiff was released on parole rather than mandatory supervision.  (D.E. 38, Page 9).  Defendant points to a Certificate of Parole signed by Plaintiff on December 12, 2008, acknowledging Plaintiff understood and agreed to the terms of his parole.  (D.E. 38-5, Pages 3-5).  Defendant also contends if Plaintiff were released on mandatory supervision, he would have signed a Certificate of Mandatory Supervision.  *See* D.E. 38-7, Pages 2-4.

Based on the Commitment Data Forms and Certificates of Parole and Mandatory Supervision submitted as exhibits, and Mr. Valdez's testimony, it is evident Plaintiff was never officially classified as eligible for nor granted mandatory supervised release, but rather was considered for and released on parole in 2008.  *See* D.E. 38-2, Page 3; D.E. 38-5, Page 5; D.E. 38-7, Pages 2-4.  Further, in his second amended complaint, Plaintiff himself

concedes he was on parole. *See* D.E. 58, Pages 1-2 ("On [May 3], 2013, Plaintiff's parole was revoked for a technical violation and [he] was returned to TDCJ."). Here, since Plaintiff was never eligible for mandatory supervision, he was not deprived of a state-created liberty interest. Therefore, there is no genuine dispute of material fact that Defendant has not violated Plaintiff's Due Process rights and Defendant's motion for summary judgment on this issue should be granted. It is respectfully recommended Plaintiff's Motion for Summary Judgment be denied, Defendant's Motion for Summary Judgment be granted, and this case be dismissed.[11]

### C. *Defendant's Request for a Strike under 28 U.S.C. § 1915(g)*

In his Second Amended Answer, Defendant asserts that Plaintiff's lawsuit is frivolous and without merit. (D.E. 59, Page 4). Defendant requests that in the event the Court determines Plaintiff's suit is frivolous, the Court enter a final order reflecting such determination, that this final order be certified and forwarded to TDCJ, and that the Court take note of such finding in accordance with the Prison Litigation Reform Act. (D.E. 59, Page 4).

Prisoner civil rights actions are subject to the provisions of the Prison Litigation Reform Act, including the "three strikes rule," 28 U.S.C. § 1915(g). The three strikes rule provides that a prisoner who has had, while incarcerated, three or more actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be

---

[11] Plaintiff also argues that by revoking his eligibility for mandatory supervision, Defendant violated the Ex Post Facto Clause of the U.S. Constitution by creating a significant risk of increasing his punishment, resulting in Plaintiff's "having to spend more time in prison th[a]n the law req[u]ired." (D.E. 58, Pages 2-3). As discussed above, the undersigned finds this argument is without merit because Plaintiff has never been eligible for mandatory supervision. For the same reasons, it is respectfully recommended that Plaintiff's motion for a preliminary injunction (D.E. 26) and requests for a permanent injunction and monetary damages (D.E. 58, Page 3) be denied.

granted is prohibited from bringing any more actions or appeals *in forma pauperis.*  28 U.S.C. § 1915(g); *Baños v. O'Guin,* 144 F.3d 883, 884 (5th Cir. 1998) (per curiam); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996).  The three strikes rule provides an exception permitting prisoners who are under imminent danger of physical harm to proceed without prepayment of the filing fee.  28 U.S.C. § 1915(g); *Baños,* 144 F.3d at 884.

In this case, the undersigned does not find that Plaintiff's lawsuit is frivolous because the Commitment Data Forms were not sufficiently clear to effectively communicate to Plaintiff his eligibility for mandatory supervision.  In 2006, Judge Johnson of the Texas Court of Criminal Appeals explicitly criticized the ambiguity of TDCJ and TBPP documents given to inmates:

> I suspect that such inexact use of language generates a plethora of legal filings, not only in this Court, but also in [T]BPP.  The flood of paper might conceivably be stanched by the use of plain, accurate descriptions of actions taken by [T]BPP and removal of notations, such as "HB 1433," that are vague (HB 1433 from which session?), uninformative, and cryptic for persons such as inmates.  For example, the notification to an inmate after a release hearing might be one of the following: "Inmate is ineligible for release on mandatory supervision because of a prior conviction for an offense listed in Texas Government Code § 508.149"; "Inmate is eligible for discretionary mandatory supervision, but has been denied release because the inmate's accrued good-conduct time does not accurately reflect the inmate's potential for rehabilitation and the inmate's release would endanger the public.  Texas Government Code § 508.149(b)"; "Inmate has been denied release on discretionary mandatory supervision for the third time and is therefore ineligible for further consideration for such release."

*Ex parte Hill*, 208 S.W.3d 462, 466 (Tex. Crim. App. 2006) (Johnson, J., dissenting).  Since TDCJ and TBPP have failed to clarify their Commitment Data Forms, the undersigned finds Plaintiff's claim should not be considered frivolous.   The undersigned respectfully

recommends that the dismissal of Plaintiff's claims not count as a "strike" for purposes of 28 U.S.C. § 1915(g).

## V.    RECOMMENDATION

Based on the foregoing, it is respectfully recommended Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motions be **DENIED**, and this action be **DISMISSED**.

ORDERED this 9th day of December, 2016.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).