Case 2:16-cv-00017 Document 66 Filed on 04/04/17 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
April 05, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| PHILLIP JACKSON, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 2:16-CV-17 |
| § | |
| DAVID GUTIERREZ § | |
| § | |
| Defendant. § | |

# ORDER

Plaintiff Phillip B. Jackson ("Jackson"), a Texas state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. Jackson is currently incarcerated at the Wayne Scott Unit in Angleton, Texas. Jackson alleges that Defendant David Gutierrez ("Gutierrez"), Presiding Officer of the Texas Board of Pardons and Paroles, illegally and unconstitutionally revoked his eligibility for House Bill 1433 ("H.B. 1433") discretionary mandatory supervision after Jackson was allegedly previously deemed eligible.

On September 11, 2000, Jackson pleaded guilty to the felony offense of aggravated assault, cause number 00-CR-2318-D, in the 105th Judicial District Court of Nueces County, Texas. *See State v. Jackson*, No. 00-CR-2318-D (105th District Court, Nueces County, Texas, July 29, 2003), D.E. 38-1, p. 4. His offense took place on April 23, 2000. *Id.* Pursuant to a plea agreement, the trial court deferred the adjudication of guilt and placed Jackson on probation. The State of Texas filed a motion to proceed with the adjudication of guilt, alleging Jackson violated the terms of his probation. On July 22, 2003, the trial court held a hearing on the State's motion and found Jackson violated six conditions of his probation agreement. Accordingly, the trial court withdrew the order deferring adjudication and heard evidence on the issue of punishment. On July 24, 2003, the trial court sentenced Jackson to twelve years in the Texas Department of Criminal Justice ("TDCJ"). *Id.*, p. 4–5.

On September 29, 2003, Jackson was taken into custody of the TDCJ. D.E. 38-2, p. 3. On December 12, 2008, he was released from TDCJ custody on parole. *Id.* On December 19, 2012, Plaintiff's parole was revoked and he received a two-year sentence for the conviction which violated his parole (assault family violence in cause no. 12-CR-4155-H). *Id.* On May 6, 2013, Plaintiff was returned to TDCJ custody due to his parole revocation and to serve his new sentence. D.E. 38-2, p. 4.

The Court has before it Jackson's Complaint (D.E. 1), Jackson's Motion for Summary Judgment and declaration in support (D.E. 22, 23), Jackson's Motion for Preliminary Injunction to compel Gutierrez to reinstate mandatory supervision eligibility (D.E. 26, 28), Gutierrez's Motion for Summary Judgment (D.E. 38), the Memorandum and Recommendations ("M&R") of the Magistrate Judge to whom this case was referred pursuant to 28 U.S.C. § 636(b) (D.E. 60), and Jackson's objections to the M&R (D.E. 62). Gutierrez did not file objections to the M&R.

The Magistrate Judge recommended that Gutierrez's Motion for Summary Judgment be granted, Jackson's motions be denied, this action be dismissed, and Gutierrez's request for a strike under 28 U.S.C. § 1915(g) be denied. *See* M&R, D.E. 60. Jackson objects to the M&R on several grounds.

## I. Statute of Limitations

Jackson objects to the Magistrate Court's finding that Jackson's claims are barred by the statute of limitations. *See* D.E. 62, p. 5–11; *see also* M&R, p. 9.[1] Jackson's objections focus largely on the argument that his alleged constitutional violation is a continuing violation, and therefore his claim is not time-barred. *See*

---

[1] The M&R provides:
> Plaintiff filed his complaint on January 14, 2016. (D.E. 1). Although Plaintiff characterizes Defendant's actions as a continuing violation, his claims arise from a single alleged violation—Defendant's revocation of his eligibility for H.B. 1433 Discretionary Mandatory Supervision on May 3, 2013. (D.E. 58, Pages 1-2). During the *Spears* hearing, Plaintiff stated he received notice of this alleged revocation when he returned to TDCJ custody in 2013. In his original and second amended complaints, Plaintiff acknowledged that he returned to TDCJ custody on May 3, 2013. (D.E. 1, Page 7 and D.E. 58, Pages 1-2). Therefore, by his own admission, Plaintiff had actual knowledge of the facts giving rise to this cause of action no later than May 3, 2013.

M&R, D.E. 60, p. 9.

D.E. 62, p. 5–10. Under a continuing violation theory, a new claim accrues each day the violation is extant. *Interamericas Investments, Ltd. v. Bd. of Governors of the Fed. Reserve Sys.*, 111 F.3d 376, 382 (5th Cir. 1997) (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n.15. A continuing violation applies where the conduct is ongoing, rather than a single event. *Id*. When a claim constitutes a continuing violation, the limitations period begins to run at the end of the violation. *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000). Courts "must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F. 3d 850, 867 (5th Cir. 1993) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). The Fifth Circuit has warned that the "theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of the [applicable] statute of limitation." *Abrams v. Baylor College of Med.*, 805 F.2d 528, 533 (5th Cir.1986).

The Fifth Circuit has held that the continuing violation doctrine applies to claims brought under 42 U.S.C. § 1983. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, No. 16-30625, 2017 WL 923408, at *5 (5th Cir. Mar. 8, 2017) (reversing a magistrate judge's finding that plaintiff's section 1983 hostile work environment allegations did not constitute a continuing violation); *see also Boswell v. Claiborne Parish Det. Ctr.*, 629 Fed. App'x. 580, 583 (5th Cir. 2015) (finding plaintiff had pleaded a continuing violation in a section 1983 denial of medical attention case).

The undersigned declines to adopt the M&R recommendation that Jackson's claim is time-barred by the statute of limitations. Because there is a constitutional expectancy of early release created by the mandatory supervision program in Texas, *see Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007), and an inmate eligible for release to mandatory supervision has a protected liberty interest in that release, *see Kossie v. Crain*, 602 F. Supp. 2d 786, 790–91 (S.D. Tex. 2009) (citing *Ex Parte*

*Geiken*, 28 S.W. 3d 553, 558–59 (Tex. Crim. App. 2000) (en banc)),[2] an individual alleging that he remains incarcerated despite having this protected liberty interest could be deemed to be suffering a continuing due process violation. Without deciding whether the continuing violation doctrine applies to toll limitations on Jackson's section 1983 claim, the undersigned proceeds to evaluate Jackson's objections to the Magistrate Judge's finding that he was not eligible for H.B. 1433 mandatory supervision.

## II.     Eligibility for Mandatory Supervision

First, Jackson argues that the Magistrate Judge's first M&R issued on March 14, 2016 ("March 14, 2016 M&R"), D.E. 11, and adopted by the undersigned, D.E. 33, entitles Jackson to declaratory and injunctive relief. That March 14, 2016 M&R evaluated Jackson's claims under the motion to dismiss standard. *See* D.E. 11, p. 4. That standard asks whether a Plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also* D.E. 11, p. 4. The Magistrate Judge found that Jackson's allegations and claims met this standard. *Id.,* p. 9. The Magistrate Judge "recommended that the Court retain Plaintiff's parole eligibility claim and order service on David Gutierrez in his official capacity." *Id.* However, this March 14, 2016 M&R is in no way dispositive of the Court's findings at the summary judgment stage of litigation—which asks whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also* M&R, D.E. 60, p. 6.

Jackson also objects to the Magistrate Judge's finding that he was not eligible for H.B. 1433 mandatory supervision. D.E. 62, p. 11–13; *see also* M&R, D.E. 60, p.

---

[2] The M&R provides a synopsis of Due Process cases and when protected liberty interests arise. *See* M&R, D.E. 60, p. 10–11.

9–15. The Magistrate Judge found that Jackson was convicted of second-degree felony aggravated assault under Texas Penal Code Section 22.02, and therefore has never been eligible for mandatory supervised release. M&R, D.E. 60, p. 13 (citing *State of Texas v. Phillip Jackson*, No. 00-CR-2318-D (July 29, 2003, 105th District Court, Nueces County, Texas)), D.E. 38-1, pp. 3–5; Tex. Gov't Code § 508.149(a)(7)).

Next, Jackson argues that his April 2000 offense "was a statutory precursor to [the] simple assault statute, of offender Plaintiff, not agg[ravated] assault statute." D.E. 62, p. 12. "The laws applying to Plaintiff . . . when he committed the offense permitted his release to H.B. 1433 discretionary mandatory supervision." *Id.* Jackson also argues that the statute under which he was convicted required there to be an affirmative finding of a deadly weapon or serious bodily injury to constitute a crime that would preclude eligibility for mandatory supervision. *Id.* Jackson points out that under the section for "Findings on Use of Deadly Weapon" in his Judgment, the Judgment states "Not applicable." *See State v. Jackson*, No. 00-CR-2318-D (105th District Court, Nueces County, Texas, July 29, 2003), D.E. 38-1, pp. 3. In sum, Jackson is making the argument that the offense upon which he was convicted did not meet the statutory precursor of aggravated assault or any other offense enumerated in Texas Government Code Section 508.149(a), and, therefore, he was entitled to mandatory supervision. *See* Tex. Gov't Code § 508.149(a) (enumerating certain crimes—including first degree and second degree aggravated assault pursuant to Texas Penal Code Section 22.02—that render an offender ineligible for mandatory supervised release).

The Court finds that Jackson's argument is without merit because the text of the Judgment provides that on September 11, 2000, "the defendant pleaded guilty to the offense of AGGRAVATED ASSAULT." *State v. Jackson*, No. 00-CR-2318-D (105th District Court, Nueces County, Texas, July 29, 2003), D.E. 38-1, p. 4 (capitalization in original). Later, the Judgment says, "[I]t is ordered, adjudged, and decreed that the defendant is guilty of the offense of AGGRAVATED ASSAULT a felony of the SECOND DEGREE." *Id.*, p. 5 (capitalizations in original). As the Magistrate Judge found, "[a]n inmate may not be released to mandatory supervision

if the inmate is serving a sentence for or has been previously been convicted of . . . a first degree felony or second degree felony under Section 22.02, Penal Code." *See* Tex. Gov't Code § 508.149(a)(7). Section 22.02 of the Texas Penal Code, in turn, criminalizes aggravated assault.[3] Furthermore, at the time of Jackson's offense on April 23, 2000, the Texas Penal Code's section for aggravated assault provided this same language:

> (a) A person commits an offense if the person commits assault as defined in Section 22.01 and the person:
>     (1) causes serious bodily injury to another, including the person's spouse; or
>     (2) uses or exhibits a deadly weapon during the commission of the assault.

Tex. Penal Code Ann. § 22.02 (West) (statute as effective on April 23, 2000). This statutory text as effective on the date of Jackson's offense demonstrates that an individual could be convicted of aggravated assault without an affirmative finding regarding the use of a deadly weapon.

Finally, Jackson reiterates his objection that he was entitled to mandatory supervision because of documentation given to him with the words "Discretionary Mandatory Supervision Release Candidate-1433." D.E. 62, p. 13 (referring to D.E. 1, Ex. 1). The Magistrate Judge's M&R addresses this point in detail:

> Plaintiff relies on the Commitment Data Form as his only support for the proposition that he was placed under consideration for discretionary mandatory supervision in September 2003. (D.E. 1-1, Page 1).
>
> The Commitment Data Form does not state that Plaintiff was eligible for mandatory supervision. With his Motion for Summary Judgment, Defendant attaches the affidavit of Charley Valdez, Program Supervisor III for the Classification and Records Department of TDCJ-CID, who explains the terminology of the Commitment Data Form. (D.E. 38-2). Mr. Valdez states that when "Discretionary Mandatory Supervision" came into effect on September 1, 1996, all Commitment Data Forms were printed with the statement "*Discretionary Mandatory Supervision Release Candidate – 1433,"

---

[3] "A person commits an offense [of aggravated assault] if the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code § 22.02(a).

> regardless of eligibility. (D.E. 38-2, Page 3). Below that statement, it was standard practice to have further comment of "Non-Mandatory Supv. Prospect" or "Mandatory Supv. Prospect" on the line below. (D.E. 38-2, Page 3). The phrase "Non-Mandatory Supv. Prospect" signifies that an inmate is ineligible for mandatory supervision, since Mr. Valdez avers Plaintiff was designated as a "Non-Mandatory Supervision Prospect" due to Plaintiff's conviction for aggravated assault. (D.E. 38-2, Page 3). Mr. Valdez states this practice was discontinued on May 31, 2005, and all Commitment Data Forms issued thereafter instead "have one of the following remarks: 'Non-Mandatory Supv. Prospect,' 'Mandatory Supv. Prospect,' or "Mandatory Supv. Prospect' with 'Discretionary Mandatory Supervision (HB1433) Candidate' on the next line." (D.E. 38-2, Page 3).

M&R, D.E. 60, p. 13–14.

The undersigned agrees with the M&R findings on this objection. Finally, Jackson argues that language from the March 14, 2016 M&R acknowledges that he is entitled to mandatory supervised release. D.E. 62, p. 12, 13. The March 14, 2016 M&R stated that Jackson's "claims are cognizable in this § 1983 action." D.E. 11, p. 8. It did not indicate that Jackson's legal claims were worthy of merit.

After independently reviewing the record and considering the applicable law, the Court **ADOPTS IN PART** the Magistrate Judge's proposed findings and recommendations (D.E. 60). The Court declines to find that Jackson's claims are barred by the statute of limitations. The Court **GRANTS** Defendants' Motion for Summary Judgment as to Jackson's section 1983 claim (D.E. 38), **DENIES** Plaintiffs' Motion for Summary Judgment (D.E. 22), **DENIES** Plaintiff's Motion for Preliminary Injunction (D.E. 26), and **DENIES** Defendant's request for a strike under 28 U.S.C. § 1915(g). The Clerk shall close this case after entering the accompanying judgment.

SIGNED this 4th day of April, 2017.

_____
Hilda Tagle
Senior United States District Judge